## ACTION FOR BREACH OF CONTRACT.

Circuit Court of Cuyahoga County.

TAPLIN, RICE & COMPANY v. McKEEFREY & COMPANY.

Decided, December 20, 1909.

*Contract for Sale of Pig Iron—Delivery—Time Not of Essence of Contract—Measure of Damages.*

1. In a contract for the delivery of 150 tons of pig iron to the defendant free of freight charges on board cars at Leetonia, Ohio (the place of business of the plaintiff), "in about equal monthly proportions during the last three months of the year 1907," time of delivery is not of the essence of the contract, and where the plaintiff shows that he was ready, willing and able to deliver the pig iron during the time agreed, but defendant refused to receive it, he may recover damages for breach of the contract.

2. Where the seller of pig iron is not the manufacturer of it, upon the breach of a contract for the purchase of pig iron from him, the measure of damages is the difference between the contract price and the market price at the time specified for delivery.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The relation of the parties here is the reverse of their relation in the court below. The terms plaintiff and defendant as used in this opinion refer to the parties as they stood in the original action.

The plaintiff is a co-partnership, the defendant is a corporation. The plaintiff sued to recover from the defendant for an

alleged breach, on the part of the defendant, of a contract entered into between the parties on the 10th day of June, 1907. The suit originally included a claim for damages growing out of the alleged violation of another contract between the same parties, but that was abandoned, so that the suit was tried upon the claim first above stated.

By the contract of June 10, 1907, the plaintiff agreed to sell to the defendant, and the defendant agreed to buy from the plaintiff one hundred and fifty tons of No. 2 Allegheny pig iron, the same to be delivered to the defendant free of freight charges on board cars at Leetonia, Ohio, in about equal monthly proportions during the last three months of the year 1907, and the defendant agreed to pay the plaintiff therefor the sum of $24 per ton, the same to be paid for in cash within thirty days from date of shipment, or by four months' note with interest at 6% per annum, interest to begin thirty days after shipment.

The plaintiff alleges in its petition that it was ready, able and willing to perform the contract on its part, but that the defendant on the 27th day of September, 1907, notified the plaintiff that it had sold its property, real and personal, and assets of every description, and from that time forward refused to accept and pay for the iron so contracted for, and so the plaintiff prays for damages.

The defendant answered admitting that it entered into the contract, as stated in the petition; that it notified the plaintiff that it had sold its assets, and it denies every other allegation of the petition. And further the defendant answers that it frequently demanded and requested of plaintiff to furnish the iron in question in accordance with the contract; that the plaintiff neglected to make such delivery at the time agreed upon, and that because of such refusal the defendant notified the plaintiff that it would not accept any iron under the contract.

Upon the trial it developed that the assets of the defendant had been purchased by a Mr. Clerkin, and there was a new corporation organized to take over the business of the defendant, which new corporation was known as "the Taplin, Rice, Clerkin Company," of which Mr. Clerkin was the principal officer and

stockholder, and the notice, already mentioned, of September 27, 1907, was made because of this sale. In that notice, which was in the form of a letter, the defendant said to the plaintiff that "we find that we still have due from you considerable iron to be delivered through the balance of the year. Mr. Clerkin and his associates are putting money enough into the concern to put in a good financial condition, and hereafter all of our bills will be discounted, instead of being settled by notes in the past. In view of this fact and also that iron is considerably cheaper now than when the contract was made with you, we would like to inquire if there are any concessions that you could make on the iron still due us?"

To this the plaintiff answered, declining to make any concessions. This answer was dated October 8, 1907.

On the 11th of October, 1907, there was written by the Taplin, Rice, Clerkin Company a letter to the plaintiff urging that there be a concession made in regard to the price of the iron contracted for by Taplin, Rice & Company. On the 14th day of October, 1907, the plaintiff wrote to the last named corporation again declining to make any concessions. On the 17th of October, 1907, the last named corporation wrote the plaintiff saying, among other things, "We wish you would send the number of tons you still owe us on these contracts, as we want to see how they correspond with our records here." On the 18th of October, the plaintiff answered this letter, in which, among other things it is said: "We also have your contract under date of June 10, 1907, for 150 tons of No. 2 Allegheny at $24 cash, f.o.b. furnace, on which there was no iron shipped." On the 30th of October the new corporation wrote the plaintiff that a Mr. Fisher of that company would probably call upon the plaintiff the next day regarding the pig iron contracts that were unfilled. On the 31st of October, the plaintiff wrote the new corporation that Mr. McKeefrey, one of the partners in the plaintiff co-partnership would not be at home either on that day or the next, and saying that they had tried to communicate by telephone with Mr. Fisher.

On the 5th of November, the plaintiff wrote the defendant saying among other things: "We are prepared to make ship-

ments on your contracts and will be glad to have you advise us when you want to have shipments resumed. On the 13th of November the new corporation wrote the plaintiff not to ship any more pig iron on any contracts with the defendant. On the 15th of November the plaintiff wrote the new corporation that as its contracts were with the defendant, they would have to do business with it (Taplin, Rice & Co.).

Enough of this correspondence has been given to show that the plaintiff shipped no iron under the contract of June 10, 1907, in the month of October, whereas by the contract it was to be shipped "in about equal proportions during the last three months of the year." The plaintiff does not plead any waiver of it on the part of the defendant, but relies for recovery on the allegation that it was ready, able and willing to furnish the iron under the contract, and that the defendant refused to accept it. If time of delivery were of the essence of this contract, we should have the question here of whether, the plaintiff having failed to deliver the first shipment under the contract, the defendant might revoke the entire contract. But we think it clear that neither party regarded *time of delivery* as of the essence of the contract. The letter of October 30th to the plaintiff can not well be explained, except upon the theory that the defendant did not regard the delivery of the iron in October as *essential* to the performance of the contract on the part of the plaintiff.

The evidence shows that the partners constituting the plaintiff co-partnership were Neal J. McKeefrey, John McKeefrey and William D. McKeefrey, and that they were officers of a corporation engaged in the manufacture of pig iron at Leetonia, Ohio, the place where this partnership was located, and in the correspondence which has not been quoted, the plaintiff refers to its connection with this manufacturing corporation, and gives as a reason why no concessions could be made as to the price of the iron, that the manufacturing company declined to make any change in the price to the plaintiff. And, it is urged, that the plaintiff should be treated exactly as this manufacturing company should be treated if it were the plaintiff here, and it is said that the measure of damages, if the plaintiff was dam-

aged, would be the difference between the cost of manufacture and the contract price, whatever the measure would be in the case of one who sells property of which he is not the manufacturer. However, this may be, the evidence did not warrant the court in holding that the plaintiff was to be treated as the manufacturer of the iron which was to be delivered under the contract.

The plaintiff gave evidence tending to show that it could have delivered the iron required by the contract substantially at the times severally specified, and also tending to show that the price of pig iron was considerably less at the time when it was to have been delivered than the price which the defendant agreed to pay for it, and that therefore the plaintiff suffered a loss by reason of the refusal of the defendant to accept the iron. At the close of the evidence on the part of the plaintiff a motion was made to have a verdict directed for the defendant. This motion was overruled, and we think properly overruled, if we are right in saying that the evidence tended to show that time of delivery was not of the essence of the contract, and that the plaintiff was ready, able and willing to perform; for then clearly no verdict should have been directed for the defendant. This motion was renewed at the close of all the evidence, and was again overruled, and for the same reasons that the court was justified in refusing the motion at the close of the plaintiff's evidence the court was justified in refusing the motion at the close of all the evidence.

At the close of the evidence the defendant submitted certain propositions in writing, which it requested the court to charge singly and not as a series. It does not appear from the record, nor do we understand that it is claimed here, that these propositions were requested to be given in writing before argument. The first of these requests was not proper, because of the first sentence in such request which reads:

"I say to you, gentlemen of the jury, that time is of the essence of the contract entered into between the plaintiff and the defendant on the 10th day of June, 1907."

In the second request this language is used:

"The plaintiff must show that it has fulfilled the contract entered into between it and the defendant on the 10th day of June, 1907, as to the delivery of the iron to be furnished by it to the defendant."

Of course if this proposition had been given, it would have been equivalent to saying that the plaintiff could not recover, because there was no claim that it had fulfilled its contract, but only that it was ready, able and willing to fulfill it, and that it failed to fulfill, because of the refusal of the defendant to receive the iron.

Without stopping to quote further we content ourselves with saying that the propositions contained in requests Nos. 3, 4, 5 and 6 so far as they state the law properly applicable to this case, were given in the charge.

Requests Nos. 7, 8, 9 and 10 are each based upon the claim that the plaintiff is to be treated as a manufacturer of the iron or else that the plaintiff was simply entitled to retain commissions on the iron sold, and each stated some proposition which we hold is not the law applicable to the case.

As to the other requests, so far as they state the law, applicable to the case, they were given in the charge.

Without stopping here to quote from the charge, an examination of it satisfies us that the court properly and clearly stated to the jury in the charge the law applicable to the case, including the proper rule for the measurement of damages.

The result is that we find no error in the record in this case which would justify a reversal and the judgment is affirmed.